## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### Case No. 22-14196

Intamin Amusement Rides Int. Corp. Est.,

Appellant,

v.

US Thrillrides, LLC and Polercoaster, LLC,

Appellees,

Appeal from the United States District Court
For the Middle District of Florida

No. 6:20-cv-00713-CEM-DCI

### ANSWER BRIEF

Benjamin A. Webster
Florida Bar No. 0045167
Christopher H. Lee
Florida Bar No. 1022131
MORGAN & MORGAN, P.A.
20 North Orange Avenue
Suite 1600
Orlando, Florida 32801
Tel: (407) 420-1414

Attorneys for Appellees
US Thrillrides, LLC and Polercoaster, LLC

*Intamin Amusement Rides Int. Corp. Est. v. US Thrillrides, LLC, et al*
Case No. 22-14196

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellees, US Thrillrides, LLC and Polercoaster, LLC, hereby disclose the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of a party's stock, and any other identifiable legal entities related to a party:

1.    Angell, Derek J. (Attorney for Appellant)

2.    Foltyn-Smith, Kyle (Attorney for Appellant)

3.    Hawxhurst, Gerald E. (Attorney for Appellant)

4.    Hawxhurst LLP (Attorneys for Appellant)

5.    Intamin Amusement Rides Int. Corp. Est. (Appellant)

6.    Irick, Daniel (United States District Court Magistrate Judge, Middle District of Florida)

7.    Kitchen, William (Principal of Appellees)

8.    Lee, Christopher H. (Attorney for Appellee)

9.    Mendoza, Carlos (United States District Court Judge, Middle District of Florida)

*Intamin Amusement Rides Int. Corp. Est. v. US Thrillrides, LLC, et al*
Case No. 22-14196

10.    Morgan & Morgan, P.A. (Attorneys for Appellees)

11.    O'Connor, Haftel & Angell, PLLC (Attorney for Appellant)

12.    Polercoaster, LLC (Appellee)

13.    US Thrillrides, LLC (Appellee)

14.    Webster, Benjamin A. (Attorney for Appellee)

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Eleventh Circuit Rule 28-1(c), Appellees respectfully suggests that oral argument is not necessary to dispose of the sole issue on appeal. There is only one issue on appeal, it is not complex, and it can be disposed of efficiently by review of the briefs and record on appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................. C-1

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF AUTHORITIES ........................................................ iv

I.    STATEMENT OF THE ISSUES ....................................... 1

II.   STATEMENT OF THE CASE ........................................... 1

    A.    Introduction ................................................. 1

    B.    Relevant Facts ................................................ 3

        i.    The CNDA (No Mandatory Arbitration Clause – Not the Basis for the Underlying Action) .................................. 4

        ii.    The MIPA (Mandatory Arbitration Clause – the Basis for The Underlying Action) ...................................... 4

        iii.    The Dubai Project ............................................ 5

        iv.    The Arbitration Brought Pursuant to the MIPA ................. 6

    C.    Relevant Procedural History ................................. 7

    D.    Rulings Presented for Review ............................... 11

III.  SUMMARY OF ARGUMENT ........................................ 11

IV.   ARGUMENT ............................................................ 12

    A.    Standard of Review ......................................... 12

    B.    Legal Standard ............................................. 14

    C.    Intamin is Not Entitled to Attorneys' Fees Under the Only Contract at Issue in this Case – the MIPA ................. 14

    D.    Intamin is Not Entitled to Attorneys' Fees Under the CNDA .................................................... 16

        i.    The underlying case did not involve any claim based on the CNDA ........................................... 16

      ii.    The underlying case had nothing to do with any "rights" under the CNDA ................................................ 18

      iii.   The underlying case had nothing to do with deciding "whether the CNDA or MIPA controlled" – it was only about whether Intamin was bound by the MIPA's arbitration provision ........................................... 20

      iv.   Intamin Did Not Prevail Under The CNDA .................... 22

   E.    Intamin's "Significant Issues" Argument is a Red Herring ......... 24

V.    CONCLUSION .................................................................................. 26

iii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases:

*Air Turbine Tech., Inc. v. Atlas Copco AB,*
  336 Fed. Appx. 986 (Fed. Cir. 2009) ........................................................ 13

*Anderson v. City of Bessemer City,*
  470 U.S. 564 (1985) ................................................................................... 13

*David v. Richman,*
  568 So.2d 922 (Fla. 1990) ....................................................................14, 15

*Davis v. Nat'l Med. Enters.,*
  253 F.3d 1314 (11th Cir.2001) .................................................................. 13

*Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.,*
  572 Fed. App'x 796 (11th Cir. 2014) ........................................................ 25

*Effective Teleservices, Inc. v. Smith,*
  132 So. 3d 335 (Fla. 4th DCA 2014) ......................................................... 14

*Eggers v. Alabama,*
  876 F.3d 1086 (11th Cir. 2017) ................................................................. 13

*Hardt. v. Reliance Standard Life Ins. Co.,*
  560 U.S. 242 (2010) ................................................................................... 14

*Moritz v. Hoyt Enters. Inc.,*
  604 So.2d 807 (Fla. 1992) ......................................................................... 25

*Padgett v. Kessinger,*
  190 So.3d 105 (Fla. 4th DCA 2015) .....................................................14, 23

*PNC Bank, National Assoc. v. MDTR, LLC,*
  243 So.3d 456 (Fla. 5th DCA 2018) .....................................................14, 15

*Seifert v. U.S. Home Corp.,*
  750 So. 2d 633 (Fla. 1999) ........................................................................ 19

*Surgical Partners, LLC, v. Choi,*
  100 So.3d 1267 (Fla. 4th DCA 2012) ...................................................14, 15

iv

*U.S. v. Alabama Dept. of Mental Health and Mental Retardation*,
    673 F.3d 1320 (11th Cir. 2012) .................................................................. 13

*Waters v. Intern. Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ................................................................. 13

## I.    STATEMENT OF THE ISSUES

Whether the District Court properly concluded that Intamin Amusement Rides Int. Corp. Est. ("Intamin") was not entitled to attorneys' fees where: (a) US Thrillrides, LLC and Polercoaster, LLC (collectively, "USTR") commenced an arbitration claiming Intamin was bound by a mandatory arbitration provision found in a Master Intellectual Property Agreement (the "MIPA"); (b) Intamin filed the underlying action to challenge whether it was bound by the MIPA's mandatory arbitration provision; (c) the only issue litigated and decided in the underlying action was whether Intamin was bound by the MIPA's mandatory arbitration provision; (d) the underlying action was not based on a separate Confidentiality and Non-Disclosure Agreement (the "CNDA") that did not contain an arbitration provision and thus, the CNDA's prevailing party fee clause did not apply.

## II.    STATEMENT OF THE CASE

### A.    <u>Introduction</u>.

The underlying action involved deciding whether Intamin was required to submit to arbitration pursuant to the mandatory arbitration provision found in only one contract – the MIPA. Upon prevailing in that action, fully aware that it was not entitled to any fees under the MIPA, Intamin moved for a determination of entitlement to attorneys' fees (the "Fee Motion") by attempting

to recharacterize the underlying case, after-the-fact, as something entirely different – a dispute over a completely different contract, the CNDA. However, as both the Magistrate and then District Court correctly recognized in denying the Fee Motion (twice), the CNDA was never the basis for USTR's invocation of arbitration, was not the issue litigated in that case, and was not decided on or enforced by the Court at any time.

Intamin's appeal is premised entirely on the complete fallacy that the underlying litigation was brought for purposes of seeking a declaratory judgment as to whether Intamin was bound by the CNDA. However, it is undisputable that the underlying matter was brought by Intamin seeking a declaratory judgment that Intamin was not bound by the arbitration provision set forth in the MIPA, which was executed by Intamin's domestic business partner International Amusements, Inc. ("IAI") and USTR. While Intamin's Complaint in the matter below includes fleeting references related to the CNDA, they have nothing to do with the actual dispute and appear to have been included solely for the purpose of manufacturing a misguided claim for fees at some time in the future (now).

USTR has never argued that the CNDA somehow bound Intamin to arbitration, because the CNDA does not contain a mandatory arbitration provision. Rather, USTR set forth numerous, good-faith legal theories as to why

Intamin was bound by the MIPA's mandatory arbitration provision even though Intamin was not technically a signatory to the MIPA. That was the only issue litigated and decided by the Court.

In addition, even if the CNDA was somehow a relevant document for purposes of determining a fee award – it clearly is not – the relevant provision in the document simply does not allow for an award of fees in this case. Intamin's attempt to seek an award of attorneys' fees under the CNDA is entirely without merit and must be denied. As the District Court correctly found in its Order denying the Fee Motion, Intamin's argument is "**<u>nonsensical</u>**" – as is this frivolous appeal.

**B.**    <u>**Relevant Facts.**</u>

USTR are two Florida companies that have the rights to sell and market a unique thrill ride attraction known as the "Polercoaster," which was invented by William Kitchen. [DE 42-3 ¶¶2-4.][1]  USTR does not manufacture or install the ride itself, but instead partners with other companies to provide those services to the end-user. [DE 42-3 ¶5.]

---

[1] In this Answer Brief, USTR will cite the record by docket entry number and page number as "[DE # p. #],"and Intamin's Initial Brief as "[Initial Brief p.#.]"

3

### i.      The CNDA (No Mandatory Arbitration Clause – Not the Basis for the Underlying Action).

In January of 2015, USTR, William Kitchen, and Intamin entered into the CNDA to allow the parties to begin conversations. [DE 42-1 Ex. 2; DE 42-3 ¶7.] The CNDA does <u>not</u> include a mandatory arbitration provision and simply protects USTR's exchange of confidential, proprietary information with Intamin. In fact, the first sentence of the Introduction section states, "Disclosing party desires to submit to Receiving Party information in connection with a possible business transaction in relation to a unique design for products covered herein under this collective non-disclosure agreement." USTR then began discussions with Intamin about manufacturing a Polercoaster that USTR was selling to SkyPlex Ownership Company, LLC ("Owner" or "Skyplex") in Orlando, Florida (the "Orlando Project"). [DE 42-3 ¶8.]

### ii.     The MIPA (Mandatory Arbitration Clause – the Basis for The Underlying Action).

Intamin then met several times with USTR, the Owners, and the engineers of the Orlando Project. Throughout the negotiating process, USTR communicated directly with Intamin about manufacturing the Polercoaster. [DE 42-3 ¶10.] In February and March of 2015, Intamin negotiated the pricing of the deal with USTR. [DE 42-1 Ex. 8; DE 42-3 Ex. B.] When it came time for the parties to sign the contract documents, Intamin told USTR that a U.S. based

4

entity, IAI, would be Intamin's "contracting entity." [DE 42-3 ¶11; DE 42-2 ¶5; 113-1 74:3-8; DE 42-1 23:19-25.] Intamin wanted IAI to serve as its "contracting entity" for the Orlando Project because "[i]t was better to have a U.S. company for the sake of running the business than a company out of Europe." [DE 2-1 25:13-15.] IAI exists to sign contracts for Intamin's work on U.S. jobs due to "product liability" laws. [DE 42-1 25:3-20, 81:11-18, Ex. 9; DE 113-3 at 104:19-23, (IAI is Intamin's USA partner), 105:18-24, Ex. 6.]

In late May 2015, IAI and Polercoaster executed the MIPA. The purpose of the MIPA was to protect Polercoaster's intellectual property that would be provided to IAI for the purpose of building the Orlando Project. Intamin is not a signatory to the MIPA, however, it is recognized as an approved subcontractor in the MIPA. Unlike the CNDA, the MIPA does include a mandatory arbitration provision for "any dispute, controversy or claim arising out of or relating to this Agreement[.]" It requires all disputes relating to the intellectual property and rights described in the MIPA to be arbitrated in Orlando, Florida.

### iii.     The Dubai Project.

In 2016, USTR began pursuing another opportunity to sell a Polercoaster in Dubai (the "Dubai Project"). [DE 42-3 ¶21; DE 42-6 ¶22.] After 2 years of effort, USTR obtained a signed Letter of Acceptance from Emaar

Entertainment, LLC ("Emaar") for the sale, manufacture, and installation of a Polercoaster for the Dubai Project. [DE 42-3 ¶22; DE 42-6 ¶23.]

Once USTR was awarded the Dubai Project, it sent Intamin a request for proposal for building and installing the Polercoaster.[2] Intamin responded by indicating that it could not fit the Dubai Project into its production schedule and declined the opportunity. Shortly after, USTR received notice from Emaar that the Dubai Project would not be proceeding forward.  [DE 42-3 ¶24; DE 42-6 ¶25.]

USTR later became aware that the Dubai Project had not been cancelled, but was proceeding forward with Intamin building a tower-based roller coaster (a knock-off of the Polercoaster) for Emaar in the exact location that USTR's Polercoaster was to be located.  Intamin had taken the business opportunity that was originally USTR's to sell and construct a ride that USTR owns, using the information and details that it received through its involvement with USTR on the Orlando Project.  [DE 42-3 ¶25; DE 42-6 ¶26.]

### iv.    The Arbitration Brought Pursuant to the MIPA.

As a result, on March 24, 2020, USTR initiated arbitration proceedings with the American Arbitration Association ("AAA") against Intamin and IAI

---

[2] Just like the Orlando Project, the Dubai Project was to be another manufacturing opportunity that USTR offered Intamin. [DE 42-3 ¶23; DE 42-6 ¶24.]

pursuant to the mandatory arbitration provision of the <u>MIPA</u>.  While USTR

brought a variety of contract, tort, and statutory claims in the Arbitration, the

<u>sole basis for arbitration</u> was <u>the MIPA</u>.  [DE 27-3 p. 9 (¶¶ 19-21).]

## C.    Relevant Procedural History.

On April 27, 2020, Intamin filed the underlying case seeking a declaratory

judgment that it was not bound by the mandatory arbitration provision found in

the MIPA. Intamin filed the Amended Complaint "seeking declaratory and

injunctive relief …to enjoin [USTR] from pursuing the arbitration claims against

IAR Liechtenstein that they have brought before the American Arbitration

Association ("AAA") because IAR Liechtenstein is not a party to any agreement

with [USTR] in which they agreed to arbitrate disputes between them." [DE 27

p. 1]

On September 14, 2021, Intamin filed a Motion for Partial Summary

Judgment, arguing that "[t]he undisputed evidence establishes that <u>IAR</u>

<u>Liechtenstein is not a party to the MIPA</u> and that USTR's alternative theories

of forcing IAR Liechtenstein to become a party to the AAA Arbitration lack

legal and factual merit." [DE 111 at p. 6 (emphasis added).]  Intamin specifically

argued that (a) it was <u>not a party to the MIPA</u> and (b) USTR's alternative

theories to subject it to the <u>MIPA</u> failed. [DE 111 pp. 17-25.] The word

"CNDA" does not appear in the argument section of the Motion for Partial

7

Summary Judgment, because the CNDA had nothing to do with the underlying case and no relief was being sought under the CNDA.

On April 26, 2022, the District Court issued its Order granting summary judgment in Intamin's favor. [DE 134.]    The District Court correctly summarized this proceeding and Intamin's argument:

> [Intamin] contends that it is entitled to summary judgment on its declaratory judgment claim <u>because it is not a signatory to the MIPA</u>—<u>the only contract at issue</u> that contains a mandatory arbitration clause, and <u>the only contract pursuant to which [USTR has] invoked the jurisdiction of the arbitration</u> in [its] arbitration demand.

[DE 134 at p. 9 (emphasis added).] The District Court correctly summarized USTR's position: "[USTR's] counterarguments seek[] to explain how a non-signatory to the <u>MIPA</u> could be bound by its mandatory arbitration clause." [*Id.* (emphasis added).]    And then the District Court announced its ruling: "[t]he Court concludes that none of these theories is sufficient to raise a genuine dispute of material fact as to Plaintiff's non-consent to <u>the MIPA's arbitration provision</u>—and the resulting non-binding nature of that provision on Plaintiff— and summary judgment will be granted as a result." [*Id.* at p. 10 (emphasis added).] The District Court's Order did not adjudicate any claims under the CNDA because none were at issue.

As a result of the District Court's Order, a Judgment in a Civil Case was entered as follows:

> IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Plaintiff on its first claim for relief, declaring that Plaintiff is not a party to the <u>Polercoaster Master Intellectual Property Agreement</u> or its arbitration and Plaintiff is not required to participate in the AAA Arbitration related to this matter.

[DE 141.]  The Judgment does not mention the CNDA – it was not at issue.

USTR then dismissed the arbitration and brought suit against Intamin in Florida state court, which was subsequently removed to the District Court. *See USTR v. Intamin*, Middle District of Florida, Orlando Division, Case No. 6:22-cv-2338-CEM-DCI (the "Merits Case").[3] That action is now actively being litigated and USTR expects to prevail on the merits.[4]

---

[3] USTR did not "abandon" the arbitration as Intamin so cavalierly argues in its Initial Brief. Intamin is the principal party that USTR seeks damages from. When the District Court determined that Intamin was not bound by the arbitration provision in the MIPA, USTR had no choice but to pursue damages through the U.S. court system.

[4] Footnote 7 of the Initial Brief injects irrelevant and untrue facts into this appeal to attempt to paint USTR in a negative light. USTR has not paid the fee award from the arbitration because USTR has no assets with which to pay such award, and it lawfully filed for protection under the Bankruptcy Code because it was unable to service its debts. Intamin makes the specious argument that Mr. Kitchen fraudulently transferred USTR's intellectual property assets to himself and then sold them, and then dismissed the bankruptcy after that came to light. While entirely irrelevant for this appeal, there was no such fraudulent transfer and none of that is true. There was no fraudulent transfer and the bankruptcy action was dismissed after Intamin's scorched-earth tactics made bankruptcy no longer a viable option – nothing more.  Footnote 7 of the Initial Brief is nothing more than a continued effort to create a false narrative and should be disregarded.

On August 15, 2022, Intamin filed the Fee Motion seeking an award of attorneys' fees pursuant to the CNDA's prevailing party fee provision, even though the underlying matter was predicated entirely on whether Intamin was subject to the arbitration clause of the MIPA, not the CNDA. [DE 143]. Disappointed, but unsurprised by Intamin's meritless Fee Motion, USTR opposed the Fee Motion. [DE 144].

On September 26, 2022, just two days after oral argument on the Fee Motion, the Magistrate issued a report recommending that it be denied (the "Report"). [DE 151]. The Magistrate correctly ruled that the CNDA had nothing to do with the underlying case or the District Court's summary judgment ruling, which was predicated entirely on whether Intamin was bound by the MIPA. Intamin challenged the Report [DE 152], and USTR's responded in opposition [DE 153].

Ultimately, on December 1, 2022, the District Court correctly upheld the Magistrate's Report and denied the Fee Motion. [DE 157]. The District Court found:

> [t]he issue upon which [Intamin] prevailed in this case and upon which the Court granted judgment was singular – whether [USTR] could force [Intamin] to arbitration under the MIPA. This not an issue which 'aris[es] out of or relat[es] to' the NDA.
> …
> Not only was the NDA not a controlling document, but it was **not even a relevant document** to the Court's determination of judgment in this case.

10

[DE 157 p. 5 (emphasis added).] As to Intamin's argument that it had somehow prevailed under the CNDA, the District Court found Intamin's entire argument nothing more than an "**attempt[] to reshape the history of this case**." [*Id.* at p. 4 (emphasis added).] The District Court went on to characterize Intamin's argument below – the same argument it rises on appeal – as "**almost nonsensical**. Certainly, [Intamin] would not have been required to arbitrate under a contract that contained no arbitration provision. If this had truly been the issue, the case would have been quickly resolved long ago." [*Id.* at fn. 1 (emphasis added).]

D.    **Rulings Presented for Review**.

Intamin challenges the District Court's patently correct Order denying the Fee Motion [DE 157], which adopted the Magistrate's Report recommending denial of the Fee Motion [DE 151.]

## III.    SUMMARY OF ARGUMENT

The District Court correctly determined that there was zero basis for an award of attorneys' fees to Intamin. First, and most obviously, Intamin is not a signatory to the MIPA and, as such, cannot avail itself of the MIPA's fee shifting provision. Second, the underlying action was <u>not</u> predicated on any breach or enforcement of the CNDA (no matter how many times Intamin tries to change history and argue that it was), nor did the District Court decide any claims or

declare any rights under the CNDA – it simply was not an issue in the case below. As such, the CNDA's fee shifting provision does not apply. Instead, the underlying action was solely brought to determine whether Intamin was <u>bound by the terms of the MIPA</u>. Finally, Intamin's "significant issues" argument is a red herring that has no bearing on the issues at hand.

Intamin argued it was not bound by the terms of the MIPA, the District Court agreed, and judgment was entered reflecting this. Intamin's "**attempts to reshape the history of this case**" by mischaracterizing it as something it clearly was not should be summarily rejected on appeal, just as they were correctly rejected twice below. The District Court's denial of the Fee Motion should be affirmed.

## IV.   ARGUMENT

### A.   <u>Standard of Review.</u>

Contrary to Intamin's assertion, this appeal raises issues of the District Court's application of a contract to the <u>facts</u>. Here, the District Court's determination that the underlying matter was a dispute over whether Intamin was bound the MIPA, not based on the CNDA in any way, was an application of the relevant contract to the facts, not pure contract interpretation as Intamin wrongly argues. The District Court's conclusion that Intamin, which successfully argued it was not bound to the MIPA, was not entitled to attorneys'

fees under the MIPA, is also a finding of fact. Findings of fact are reviewed under the "highly deferential" standard of clear error. *U.S. v. Alabama Dept. of Mental Health and Mental Retardation*, 673 F.3d 1320, 1324 (11th Cir. 2012) (citations omitted). More specifically, "[a] district court's <u>application of contract interpretation to the facts</u>, in the context of attorney fee provisions, is reviewed for <u>abuse of discretion</u> or <u>clear error</u>." *Air Turbine Tech., Inc. v. Atlas Copco AB*, 336 Fed. Appx. 986, 988 (Fed. Cir. 2009) (emphasis added); *accord Davis v. Nat'l Med. Enters.*, 253 F.3d 1314, 1318–19 (11th Cir.2001); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). In other words, an appellate court cannot substitute its interpretation of the facts for that of a trial court "simply because [it] 'might give the facts another constructions [or] resolve the ambiguities differently." *Eggers v. Alabama*, 876 F.3d 1086, 1095 (11th Cir. 2017) (citations omitted).

That said, the standard of review does not matter in this case. Under either the clear error standard or Intamin's incorrect *de novo* standard, the District Court's Order must be affirmed.

13

**B.**    **Legal Standard.**

Under the "American Rule," each party must pay its own attorneys' fees, unless a statute or contract provides otherwise. *Hardt. v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-253 (2010).  In Florida, a party is <u>only</u> entitled to an award of attorneys' fees pursuant to a contract provision if it is the prevailing party on a breach of contract claim. *Padgett v. Kessinger*, 190 So.3d 105, 108 (Fla. 4th DCA 2015).  "Fees authorized by contract apply <u>only</u> to <u>claims based on the contract</u>." *Effective Teleservices, Inc. v. Smith*, 132 So. 3d 335, 340 (Fla. 4th DCA 2014)(emphasis added).  Moreover, it is black-letter Florida law that "a stranger to the contract cannot recover attorney's fees based on the contract." *PNC Bank, National Assoc. v. MDTR, LLC*, 243 So.3d 456, 458 (Fla. 5th DCA 2018).  Regardless of the allegations, if a party defending a contract action prevails on a theory that it was not a party to the contract, it cannot rely on an attorney's fee provision in that contract to recover attorney's fees. *See, e.g., David v. Richman*, 568 So.2d 922, 924 (Fla. 1990); *Surgical Partners, LLC, v. Choi,* 100 So.3d 1267 (Fla. 4th DCA 2012).

**C.**    **Intamin is Not Entitled to Attorneys' Fees Under the Only Contract at Issue in this Case – the MIPA.**

This appeal is <u>not about contract interpretation</u>, but rather, <u>application of a contract to the facts of a case</u>. In other words, the primary issue the District

Court was faced with is determining whether a particular contract governed the dispute at hand, not what that contract says. Despite Intamin's long-winded, repetitive effort to gull this Court into believing that CNDA was somehow a contract litigated below, the District Court (both the Magistrate and the Judge) correctly determined that the <u>only contract</u> <u>litigated</u> and the <u>only contract</u> <u>relevant</u> to the dispute over whether Intamin could be forced to arbitrate was <u>the</u> <u>MIPA</u>.

In the underlying case, Intamin argued that it was not bound by the arbitration provisions of the <u>MIPA</u> because it was <u>not</u> a <u>signatory to the MIPA</u>. The District Court agreed and entered summary judgment on the issue of whether Intamin was bound by the MIPA. But since Intamin was technically not a signatory to the MIPA and was successful in arguing that it was not bound by the MIPA, the only contract at issue, the Magistrate quickly and succinctly denied the Fee Motion; and the District Court correctly agreed.

The District Court was correct. After arguing and prevailing that it was a "stranger" to the MIPA, Intamin cannot now rely on the attorneys' fee provision found in the MIPA to seek an award of fees. *E.g.*, *PNC Bank*, 243 So.3d at 458; *Richman*, 568 So.2d at 924; *Surgical Partners, LLC,* 100 So.3d 1267. Because the only declaration of rights that occurred was whether the MIPA applied to

15

Intamin, and Intamin was determined to not be a party or bound by the MIPA, Intamin could not seek fees under the MIPA.

However, and somewhat astonishingly, Intamin continues to argue that the case below was somehow really about enforcing the CNDA – a contract not even relevant to the arbitrability issue. This argument is an unfortunate attempt to manufacture a fee claim that does not exist. Intamin's continued "**attempts to reshape history**" should be rejected on appeal just as they were rejected twice below.  Intamin prevailed in obtaining a declaration that it was not bound by the MIPA's arbitration provision, so it cannot seek fees under the MIPA. The analysis should end here.

## D.  <u>Intamin is Not Entitled to Attorneys' Fees Under the CNDA.</u>

### i.  The underlying case did not involve any claim based on the CNDA.

The underlying case was based solely on one issue: <u>whether the MIPA's mandatory arbitration provision bound Intamin even though it was a non-signatory</u>. USTR asserted numerous, good-faith reasons why Intamin should be bound by the arbitration provision in the MIPA. Intamin disagreed, arguing it was not bound by the MIPA. Ultimately, the District Court determined that "[Intamin] is not a party to the <u>Polercoaster Master Intellectual Property Agreement</u> or its arbitration and [Intamin] is not required to participate in the

AAA Arbitration related to this matter." [DE 141.]  Thus, the underlying case only involved determining whether Intamin was bound by the MIPA – it had nothing to do with adjudicating anything under the CNDA. That is why the District Court correctly denied the Fee Motion, because it was based on a contract that was not litigated.

In the face of this reality, Intamin amazingly continues to argue that the "justiciable controversy" in this matter somehow was "whether the CNDA contains any agreement by [Intamin] to arbitrate disputes with Defendants arising under the CNDA." [DE 143 at p. 9; Initial Brief p. 31.] There was no such controversy. The CNDA clearly does not contain a mandatory arbitration provision, USTR never alleged or inferred that Intamin was required to arbitrate under the CNDA, and the District Court was not confronted with such issues (nor did it decide them). Rather, Intamin contended that it was entitled to declaratory judgment "because it is not a signatory to the MIPA," which was "the only contract at issue that contains a mandatory arbitration clause, and the only contract pursuant to which [USTR has] invoked the jurisdiction of the arbitration in their arbitration demand." [DE 134 at p. 9 (emphasis added).]

The underlying case involved a declaratory action claim and defenses centered solely on whether Intamin could be compelled to arbitrate under the

MIPA. That is all. There is no basis to pursue fees under a different contract. The District Court was correct and should be affirmed.

### ii.    The underlying case had nothing to do with any "rights" under the CNDA.

Aware that the underlying case did not involve any claim under the CNDA, Intamin attempts to re-caste the case as "enforcing rights" under the CNDA. Of course, a quick review of the record reveals that the underlying case had nothing to do with enforcing some unknown rights in a contract that had no bearing on the arbitrability question at hand.

The language of the CNDA provides for fees in limited circumstances, and that has nothing to do with the MIPA. The CNDA states "[i]f either party employs attorneys to <u>enforce any rights</u> <u>arising out of or relating to this Agreement</u>, the prevailing party, as determined by the finder of fact, shall be entitled to recover reasonable attorneys' fees." [DE 42-1 Ex. 2 (emphasis added).] Intamin did <u>not</u> employ an attorney to <u>enforce any rights</u> arising out of the CNDA. In fact, Intamin had no substantive rights arising out of the CNDA. The CNDA only provides rights to USTR. Intamin only had <u>obligations</u> under the CNDA, namely, not to use or disclose any of USTR's Confidential Information or Intellectual Property Rights. Indeed, Section 1 of the "Miscellaneous Provisions" expressly states "No right…is granted to you by the terms and conditions of this Agreement[.]" [DE 42-1 Ex. 2.]

18

In its Initial Brief, Intamin repeats the strained argument it made below, that it somehow enforced some mysterious "rights" set forth in the CNDA. While not entirely clear, Intamin appears to argue that it somehow enforced its "rights" to litigate in court which "exist" because the CNDA does not require arbitration. As recognized by the Magistrate and the District Court, Intamin's tortured reasoning is nothing more than attempt to "**to reshape the history of this case**" and "**is <u>almost nonsensical</u>**." [DE 157 p. 4 and fn. 1 (emphasis added).] The CNDA does not contain any "right to litigate in court."[5] That would come from a state or federal constitution, which Intamin admits in its Initial Brief. [Initial Brief p. 45 ("constitutional jury trial rights").] The District Court correctly determined that the underlying litigation only concerned whether Intamin was bound by the MIPA, and whether the MIPA's provisions waived Intamin's jury trial rights – it had nothing to do with enforcing some non-existent "rights" under the CNDA.

---

[5] As support for its tortured argument about CNDA "rights," Intamin cites to *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 642 (Fla. 1999) for a supposed proposition about contracts containing "positive rights" and "so called negative or reserved rights." [Initial Brief pp. 28-29.] Not only does *Seifert* not stand for any such proposition, it does not even discuss notions of "positive rights" or "so called negative or reserved rights," nor do the words "positive rights," "negative rights," or "reserved rights" even appear in the case. This is yet another attempt to manufacture a fee claim that simply does not exist.

The District Court was correct and the record is clear. The underlying case only involved adjudicating whether Intamin was bound by the MIPA. It had nothing to with adjudicating any "rights" under the CNDA. Thus, in addition to the obvious fact that this case did not involve adjudicating claims brought under the CNDA, the CNDA would not provide a basis for fees anyway because no CNDA "rights" were adjudicated either.  For this additional reason, the District Court's Order should be affirmed.

### iii.    The underlying case had nothing to do with deciding "whether the CNDA or MIPA controlled" – it was only about whether Intamin was bound by the MIPA's arbitration provision.

In its Opening Brief, Intamin argues over-and-over that the underlying case was somehow about which document "controlled" – the MIPA or the CNDA – in hopes that repetition will trump truth.  The underlying case was never about "which document controlled." That is a made-up narrative by a party hoping to manufacture a fee claim that never existed.

The <u>only</u> issue litigated below is whether Intamin could be forced to arbitrate. And that determination depended <u>solely</u> on whether Intamin was bound by the MIPA and its mandatory arbitration provision. USTR argued it was.  Intamin argued it was not.  Stated differently, the MIPA was the <u>sole</u> basis for arbitration, and whether its provisions applied to Intamin was the <u>only</u> issue below. The CNDA has no mandatory arbitration provision, and thus

20

predictably had nothing to do with underlying case (other than providing some historical context). There was never any argument over "which document controlled," and that was never an issue below. Put simply, there was nothing for the CNDA "to control." Either Intamin was bound by the MIPA's arbitration provision or it was not. The CNDA had nothing to do with that issue in any way – there was no issue for it to "control."

Next, USTR's denial of certain allegations of the operative Complaint did not change the nature of the underlying dispute or provide any basis for attorneys' fees. In paragraphs 30 and 33-35 of the underlying Complaint, Intamin combined multiple separate factual allegations in each paragraph relating to the CNDA, the MIPA, and other things. For instance, paragraph 33 alleged that Intamin "is not required to arbitrate" and that the MIPA, "which contains the only arbitration provision [USTR] appear[s] to rely on," provided no basis to compel arbitration. Of course, USTR "denied" those allegations; they concerned the core dispute, the MIPA. [DE 27 ¶ 33.] The fact that "CNDA related allegations" were interwoven into paragraphs containing MIPA allegations has zero relevance to the substantive issue of whether attorney's fees are due pursuant to contract that was never litigated. Intamin's argument to the contrary is merely another attempt to manufacture a fictitious basis for fees by

recasting the underlying matter and the District Court's rulings as something completely different than what they were.[6]

### iv.        Intamin Did Not Prevail Under The CNDA.

Intamin's argument that it somehow prevailed under the CNDA is bizarre, extremely misleading, and was conjured only for purposes of pursuing the Fee Motion that should not have been filed. The only issue the District Court resolved and declared was that Intamin was "not a party to the <u>Polercoaster Master Intellectual Property Agreement</u> or its arbitration and … not required to participate in the AAA Arbitration related to this matter." [DE 141.] That is all.

Intamin continues to attempt to "reshape the history of this case" by conflating the claims brought in the Arbitration with the sole issue litigated in the underlying case. Intamin argues that since USTR brought a claim in the Arbitration for breach of the CNDA (among 8 other common law and statutory claims), that somehow has a bearing on whether Intamin is entitled to recover fees in this case under the CNDA. [DE 143 pp. 12-13]. That is completely

---

[6] The number of times Intamin mischaracterizes the underlying action and the District Court's rulings are too many to address. The only issue ever litigated was whether Intamin was bound to the MIPA's mandatory arbitration clause through various non-signatory theories. There was never a dispute about the CNDA or any of its provisions. Indeed, in the proceedings below, Intamin even admitted that the CNDA was not at issue, stating "[USTR] took the position that the CNDA did not control the issue of arbitration and argued their alternative theories for arbitration." [DE 143 p. 15.]

wrong. The issue in the underlying case was whether Intamin was prevailing party on a claim for breach of a contract that allows for fee shifting – <u>it was not</u>, as there were <u>no claims brought under any such contract in the underlying action</u> – not what claims were brought in the Arbitration. *See*, *e.g.*, *Padgett*, 190 So.3d at 108. Again, the case below was not based on the CNDA, USTR did not argue the CNDA required arbitration, Intamin did not move for summary judgment on the CNDA, and the District Court did not rule on or declare any rights under the CNDA. Intamin simply did not prevail on anything related to the CNDA.

Intamin's efforts to reinvent the underlying litigation as a "win" under the CNDA went so far as to plainly misrepresenting the District Court's actual declaration of rights.  When describing the Judgment issued in this case in its papers below, Intamin attempted to completely rewrite the District Court's judgment, claiming the Judgment said:

> It <u>prevailed on its declaratory judgment claim</u>—that the <u>CNDA</u> (the only contract between IAR Liechtenstein and Defendants) does not require it to participate in the AAA Arbitration to defend against the breach of the CNDA and other claims that Defendants asserted against it. (See Judgment (Dkt. No. 141) at 1.)

[DE 143 pp. 12-13 (emphasis added).] Of course, the Judgment said <u>no such thing</u>. Rather, the Judgment declared rights under the <u>MIPA</u>:

> IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Plaintiff on its first claim for relief, declaring that Plaintiff is not a party to the <u>Polercoaster Master Intellectual Property</u>

Agreement or its arbitration and Plaintiff is not required to participate in the AAA Arbitration related to this matter.

[DE 141 (emphasis added).] In its Initial Brief on appeal, Intamin refrained from such outright deception, but still argues several times that the judgment somehow declared rights under the CNDA. [Initial Brief pp. 9, 33, 43.]

Of course, a simple review of the Judgment reveals it did not mention the CNDA; that is because the CNDA was not litigated, was not the contract at issue in this case, and the District Court declared nothing about it or any of its "rights." The CNDA is a contract between the parties that is the subject of a different, separate case – the Merits Case – but had nothing to do with Intamin prevailing in the underlying case.

Intamin prevailed in securing a declaration that it is not bound by the MIPA's arbitration clause. Whether the CNDA required arbitration was not litigated, was not contested (it obviously did not), and was not decided. Intamin clearly did not prevail under the CNDA or on anything related to the CNDA. As such, there is no basis for applying the CNDA's attorneys' fees provisions in this case.

## E. Intamin's "Significant Issues" Argument is a Red Herring.

For its final argument on appeal, Intamin spends three pages of the Initial Brief arguing that the Magistrate misapplied the "significant issues" test and that

is somehow a basis to overturn the District Court. This argument is another rank mischaracterization of the record below and is, once again, completely wrong.

Neither the Magistrate's ruling, nor the District Court's ruling, applied the type of "significant issue" analysis Intamin suggests. Instead, the Magistrate merely recognized that "the prevailing party for purposes of attorneys' fees is the party that prevailed on any significant issue in the litigation." *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 Fed. App'x 796, 801 (11th Cir. 2014) (*citing Moritz v. Hoyt Enters. Inc.*, 604 So.2d 807, 809-10 (Fla. 1992)). [DE 151 p. 5.] There was no dispute that Intamin was the prevailing party on the only issue in the case – whether it was bound by the MIPA or not. The Magistrate then went on to conclude that CNDA was not an issue in the case and was not the basis for any relief sought or obtained in this case. [DE 151 pp. 5-8.]  The District Court then adopted the Magistrate's ruling as part of its own Order, concluding that the issues below did not arise from or relate to the CNDA, the CNDA was not the "controlling document" for purposes of a fee award, and Intamin's attempt to re-write history was "almost nonsensical." [DE 157 pp. 5-6 and fn. 1.] In fact, the word "significant" is not even in the District Court's Order. [*See* DE 157.]

USTR has never disputed that Intamin was the prevailing party in the underlying matter on the merits – that the District Court found it was not bound

by the arbitration provision found in the <u>MIPA</u> – and therefore no "significant issue" analysis was necessary. Other than to attempt to intentionally confuse the issues, it is unclear why Intamin devotes several pages to such a needless argument. Intamin was never the prevailing party on any action premised upon the CNDA – that claim is now before the District Court in the currently pending Merits Case regarding Intamin's theft and use of USTR's intellectual property. There was no "significant issue" analysis performed below – the District Court simply found that Intamin's sole basis for its fee claim was not even part of the underlying case – and none need be performed now. This entire argument is a red-herring and should be disregarded. The District Court should be affirmed.

## V.    CONCLUSION

This appeal should not have been filed. There was zero basis for a fee award below, as there was no claim brought under the CNDA, there were no "CNDA rights" at issue, and the District Court did not rule on the CNDA or on any issue that could invoke its irrelevant fee shifting provisions. The underlying case only involved whether the MIPA and its arbitration provision applied to Intamin. And Intamin knows this. The Fee Motion and this appeal are nothing more than a hyper-aggressive, win-at-all-costs strategy by Intamin that should not be part of civil litigation and should be summarily rejected. The District Court was correct and should be summarily affirmed.

26

Dated: January 12, 2024

Respectfully submitted,

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*/s/  Benjamin A. Webster*
**Benjamin A. Webster**
Florida Bar No. 0045167
**Christopher H. Lee**
Florida Bar No. 1022131
20 N. Orange Ave, Suite 1600
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3337
BWebster@forthepeople.com
CLee@forthepeople.com
*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this Appellees' Opening Brief uses Calisto MT 14-point font and consists of 6,155 words.

*/s/ Benjamin A. Webster*
Benjamin A. Webster

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Benjamin A. Webster*
Benjamin A. Webster

28